NIGHT BOX
FILED

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

APR 0 2 2003

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

| | |
|---|---|
| DEBORAH A. METTER, Individually And On Behalf Of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| VOICEFLASH NETWORKS, INC., ROBERT J. KAUFMAN, THOMAS C. TEPER, STEVEN SERLE, and MARK BRODY, | ) ) ) ) |
| Defendants. | ) ) ) |

# 03 - 80257

# CIV - HURLEY

MAGISTRATE JUDGE
LYNCH

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff, individually and on behalf of all other persons similarly situated, by her undersigned attorneys, alleges upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the public documents and announcements made by Defendants, Securities and Exchange Commission ("SEC") filings, and press releases regarding VoiceFlash Networks, Inc. ("VoiceFlash" or the "Company"), alleges, for her complaint, as follows:

## NATURE OF THE ACTION

1.      This is a federal class action on behalf of purchasers of VoiceFlash securities between March 15, 2002 and January 24, 2003, inclusive, (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated under Section 10(b) by the SEC [17 C.F.R. § 240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b).  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District and VoiceFlash conducts business in this District.

5.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff Deborah A. Metter, as set forth in the accompanying certification incorporated by reference herein, purchased the common stock of VoiceFlash at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant VoiceFlash is a Florida corporation with its principal executive offices located at 6401 Congress Avenue, Boca Raton, Florida.  VoiceFlash Networks, Inc. (doing business as The DataFlash Corporation) is a financial service company.  It offers advanced transaction

processing and customized electronic payment software for commercial businesses. The Company also offers pre-paid and other similar card products.

8.      Robert J. Kaufman ("Kaufman") was, at all relevant times herein, President, CEO and Vice Chairman of the Board of Directors of the Company.

9.      Thomas C. Teper ("Teper") was, at all relevant times herein, CFO, Executive Vice President and Director of the Company.

10.     Steven Serle ("Serle") was, at all relevant times herein, a Director and Chairman of Audit Committee of the Company.

11.     Mark Brody ("Brody") was, at all relevant times herein, a Director of the Company.

12.     Defendants Kaufman, Teper, Serle, and Brody are collectively referred to as the "Individual Defendants."

13.     During the Class Period, the Individual Defendants, as senior executive officers and directors of VoiceFlash, were privy to confidential and proprietary information concerning VoiceFlash, its operations, finances, financial condition, and present and future business prospects. The Individual Defendants also had access to material, adverse, non-public information concerning VoiceFlash as discussed in detail below. Because of their positions with VoiceFlash, the Individual Defendants had access to non-public information about its business, finances, products, markets, and present and future business prospects via access to internal corporate documents, conversations, and communications with other corporate officers and employees, attendance at management and board of directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants

knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

14.     The Individual Defendants are liable as direct participants in, and as co-conspirators with respect to, the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and directors were "controlling persons" within the meaning of Section 20 of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of VoiceFlash's business.

15.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases, and presentations to securities analysts, and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

16.     As senior executive officers and/or directors and as controlling persons of a publicly-traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, the Individual Defendants had a duty to disseminate promptly accurate and truthful information with respect to VoiceFlash's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, and to correct any previously-issued statements that had become materially misleading

-4-

or untrue, so that the market price of VoiceFlash's common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

17.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of VoiceFlash's common stock by disseminating materially false and misleading statements and/or concealing material, adverse facts. The scheme: (i) deceived the investing public regarding VoiceFlash's business, operations, and management and the intrinsic value of VoiceFlash securities; and (ii) caused Plaintiff and the other members of the Class to purchase VoiceFlash's securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all those who purchased the securities of VoiceFlash during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

19.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by VoiceFlash or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

20. Plaintiff's claims are typical of the claims of the Class, as all Class members are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

21. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in class and securities litigation.

22. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of VoiceFlash; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

23. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

-6-

## BACKGROUND

24.     On December 5, 2001, the Company announced the appointment of Robert J. Kaufman as the new Chief Executive Officer and President. The Company further announced that it had closed its acquisition of United Capturdyne Technologies ("UCT").

25.     On December 11, 2001, as reported by The Palm Beach Post, Defendant Kaufman "predict[ed] the company will reach $10 million in revenue and some level of profitability next year."

## MATERIALLY FALSE AND MISLEADING
## STATEMENTS MADE DURING THE CLASS PERIOD

26.     On March 15, 2002, the Company announced financial results for the quarter ended January 31, 2002. The press release stated in relevant part:

> The Company reported net income of $459,713, or $0.04 on a per share basis, compared to a net loss of $426,000, or ($0.07) per share, for the same period in 2001. The increase in the Company's per share results for the quarter ended January 31, 2002 from the comparable 2001 period is due primarily to the October 2001 acquisition of United Capturdyne Technologies, Inc. For the quarter ended January 31, 2002, the Company reported sales revenue of $1,189,000, compared to sales revenue of $61,100 for the same period in 2001.

> Commenting on the report, VoiceFlash Networks CEO Robert J. Kaufman said, "We are very pleased with the company's second-quarter results, and we confidently expect this revenue and earnings momentum to continue in this fiscal year. Going forward, Voice flash's reach is extending and accelerating in many areas. The strategic addition of United Capturdyne in October provides us with state-of-the-art technology and broader capabilities as we transition into an even wider-ranging financial services company."

> Kaufman continued, "We have just completed the most successful quarter in the company's history. We continue to develop compelling new products and services, and we fully anticipate further growth and expansion in 2002 and beyond, as we draw on additional strategic

relationships and add new dimensions to the company's capacities and capabilities.

27.     In response to this report, the Company's shares rose nearly 20% on volume of over one million shares traded.

28.     On May 8, 2002, the Company announced that it had received notice that its common stock will be delisted from the Nasdaq Small Cap Market effective May 8, 2002.  In response to Nasdaq's determination, Defendants reassured investors that VoiceFlash's financial condition was solid and that profitability would continue.  Defendant Kaufman stated in relevant part:

> "We have made substantial progress re-engineering the Company as a profitable financial services company as evidenced by the recently reported quarter. Last quarter we reported the most successful quarter in the Company's history (net income of $459,713 on revenues of $1,189,000).  We expect this revenue and earnings momentum to continue in this fiscal year and beyond." Kaufman continued, "The strategic addition of United Capturdyne in October 2001 has provided us with state-of-the-art technology and broad capabilities in the financial services industry.  Since October 2001, the Company has satisfied its needs for working capital from cash generated from operations.

> Going forward, we are continuing to develop compelling new products and services, and we fully anticipate further growth and expansion in 2002.  Similar to the recently announced partnership with CrossCheck, Inc., we anticipate entering into other strategic relationships and adding new dimensions to the company's capacities and capabilities."

> "We believe we have implemented a plan that would have brought us into compliance with the NASDAQ's continued listing requirements. This NASDAQ determination does not change our plans to execute upon our previously announced business strategies."

29.     On June 6, 2002, the Company announced "another solid quarter of revenues and net income for the third quarter."  The press release stated in relevant part:

-8-

VoiceFlash Networks, Inc. (OTCBB:VFNX), today announced financial results for the quarter ended April 30, 2002. For the quarter ended April 30, 2002, the Company reported revenues of $1,293,994, compared to revenue of $33,426 for the same period in 2001. For the nine months ended April 30, 2002, the Company reported revenues of $2,602,879, compared to $150,978 for the same period in 2001. For the quarter ended April 30, 2002, the Company reported net income applicable to common stockholders of $341,551, or $0.02 on a per share basis, compared to a net loss of $2,085,236, or $0.32 loss per share, for the same period in 2001.

\* \* \*

The increase in the Company's per share results for the quarter ended and nine months ended April 30, 2002 from the comparable 2001 periods are primarily due to the operating results of its wholly-owned subsidiary United Capturdyne Technologies, which was acquired on October 2001, and a cost reduction program during fiscal 2002.

\* \* \*

"We are pleased to see the sequential revenues growth in our core business and for the second quarter in a row solid net income," reports Chief Executive Officer Robert J. Kaufman. "We are successfully stabilizing the Company's financial condition and are well positioned to build on our core competencies in the burgeoning financial services industry." In addition, the Company announced the appointment of Thomas C. Teper as the Company's Chief Financial Officer.

30.    VoiceFlash shares again rose in response to the false and misleading news, increasing over 20% on heavy trading.

31.    On October 3, 2002, the Company announced that it had registered to conduct business under the new name The DataFlash Corporation. According to Defendant Kaufman, "[i]n the past year, our company has undertaken the exciting change in direction of providing financial services and products, including custom transaction processing and stored value debit cards. . . . The

DataFlash Corporation name better represents our business model and focus on the future of the company."

      32.    On October 22, 2002, the Company announced record revenues and profits for the first time in the Company's seven-year history. The press release stated in relevant part:

> For the year ended July 31, 2002, the Company reported revenues of $4,227,923, as compared to $178,572 for the same period in 2001, an increase of $4,049,351.

> For the quarter ended July 31, 2002, revenues soared to $1,625,044, representing a 26% increase over the previous quarter. Based on the Company's experiences to date, the Company anticipates that the revenues in the first fiscal quarter of 2003 will exceed the revenues generated in the fourth-fiscal quarter 2002. For the year ended July 31, 2002, the Company reported net income of $634,244 or $0.03 per share, compared to a net loss of $17,746,641, or a $2.63 loss per share, for the same period in 2001. The Company's net income for fiscal 2002 represents 15% of revenues. For the quarter ended July 31, 2002, the Company reported net income of $380,253, or $0.02 per share, compared to a net loss of $14,817,783, or a $2.13 loss per share, for the same period in 2001.

> All of the Company's revenues during fiscal 2002 were generated from financial services in the ten months ending July 31, 2002 (from October 2001 until the July 31, 2002 fiscal year end). Specifically, during fiscal 2002, 93% of the Company's revenues were from automatic clearing house ("ACH") transactions, 5% were from the sale of card-based products, and 2% were from financial software services. In comparison and reflecting the success of the implementation of the new corporate direction, the Company's revenues for fiscal 2001 were solely generated from the sale of speech recognition and wireless technology products and services.

> Commenting on the company's year-end financial results, CEO Robert J. Kaufman said, "For the first time in the Company's seven-year operating history, we have ended the fiscal year with record revenues and substantial profits. We are especially excited to see the 26% growth in revenues for the fourth quarter over the previous quarter, primarily from our ACH business. We expect the trend of growth to continue in 2003."

In October 2001, the Company shifted its business model from a technology development company to a financial services company with the acquisition of United Capturdyne Technologies, Inc. ("UCT"), a supplier of advanced transaction processing and account management software for enterprise retail and service oriented commercial clients. In addition to acquiring UCT, the Company's management team successfully re-engineered the UCT business and was instrumental in spurring a four-fold increase in revenues (UCT generated $4,023,06 1 of revenues for the ten-month period from the October 2001 acquisition and integration date until July 3 1,2002, the Company's fiscal year end, compared to $1,010,255 for the same period in 2001).

In addition, for the quarter ended July 31, 2002, the Company generated $774,334 in cash flow from operating activities. Shareholder's equity also improved dramatically from a deficit of $1,115,041 as of July 31, 2001 to a positive balance of $775,162 as of July 31, 2002, as a result of the net income in the last three quarters, the sale of common stock, and the conversion of debt to equity.

"Much of the dramatic turnaround in the Company's performance and net income for this year can be attributed to the hiring of experienced and professional executives who have led the Company into a new business direction," reports Mr. Kaufman. "As excited as we are about the performance of the ACH business, we believe that our stored value, debit and credit card business has even more potential."

The record revenues, profits and cash flows combined with a dramatic improvement in the Company's balance sheet has resulted in an unqualified opinion from its Independent Certified Public Accountants, Sherb & Co., LLP dated October 9, 2002.

33.    On October 22, 2002, Defendants filed with the SEC the Company's annual report on Form 10-K for the fiscal period ending July 31, 2002. The Form 10-K, signed by the Individual Defendants, reported the same false and misleading financial results reported in the October 22nd press release. The Form 10-K also contained a "Report of Independent Certified Public Accountants" by Sherb & Co., dated October 9, 2002, certifying that the Company's reported

financial results for the fiscal years ended July 31, 2002 and 2001 were in conformity with GAAP.

More specifically, according to Defendant Sherb & Co.:

> We have audited the accompanying consolidated balance sheet of VoiceFlash Networks, Inc. (D/B/A "The DataFlash Corporation"), as of July 31, 2002 and the related consolidated statements of income, shareholders' equity and cash flows for the years ended July 31, 2002 and 2001. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these consolidated financial statements based on our audits.
>
> We conducted our audits in accordance with auditing standards generally accepted in the United States. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.
>
> In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of VoiceFlash Networks, Inc. (D/B/A "The DataFlash Corporation"), as of July 31, 2002 and the results of its operations and its cash flows for the years ended July 31, 2002 and 2001, in conformity with accounting principles generally accepted in the United States.

34.     Again the market reacted favorably. In response to the above representations, VoiceFlash shares increased approximately 30% from the prior day's close.

## THE TRUTH BEGINS TO EMERGE

35.     On December 13, 2002, the PR Newswire reported that Lawrence Cohen, a member of Board of Directors of VoiceFlash and the largest shareholder, commenced an action to compel an annual shareholder meeting. According to the press release:

Mr. Cohen announce[d] he was recently approached by employees of United Capturdyne Technologies, Inc., a wholly owned subsidiary of VoiceFlash, who advised Mr. Cohen that they uncovered potentially material misstatements in the Consolidated Financial Statements of VoiceFlash included in the company's Annual Report n Form 10-KSB for the year ended July 31, 2002, which contained the certifications of VoiceFlash's CEO and CFO, as required by the Sarbanes-Oxley Act of 2002. Mr. Cohen has reported the matters in question to the appropriate authorities. At the December 9, 2002 Board meeting, Mr. Cohen also put forth a resolution for the company to initiate an independent investigation of the matters. That resolution failed by a vote of four (4) to three (3).

Mr. Cohen had been the Chairman of the Board of VoiceFlash since its formation in 1995, but was removed as Chairman by a four (4) to three (3) vote of the Board of Directors at the December 9, 2002 meeting.

36.     On January 24, 2003, VoiceFlash shareholders were shocked when it was reported in a press release that VoiceFlash would liquidate by filing an Assignment for the Benefit of Creditors under Chapter 727 of the Florida Statutes, pursuant to an action of the Board of Directors of VoiceFlash.  According to the press release, "[t]he company determined that its liabilities exceeded its assets and that its current cash flow was insufficient to meet the obligations of the company and its subsidiaries to their respective creditors."  The press release further reported that "Lawrence Cohen and Maxwell Jeffrey Korbin II have resigned as directors, citing differences with management and alleging that the company's financial statements for the fiscal year ended July 31, 2002, may be materially false and misleading, and that the company may have improperly recognized and accounted for fiscal 2002 revenues and reserves.  Management disagrees with the characterization."

37.     Market reaction to the news was dramatic.  The Company's common stock, which traded as high as $0.70 during the Class Period, plummeted to $0.01 on volume of over 980,000 shares.

## UNDISCLOSED ADVERSE INFORMATION

38.     The market for VoiceFlash's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, VoiceFlash's common stock traded at artificially inflated prices during the Class Period. The artificial inflation continued until the time VoiceFlash acknowledged that, contrary to its representations during the Class Period, its financial position was dire and this admission was communicated to, and/or digested by, the securities markets.  Plaintiff and other members of the Class purchased or otherwise acquired VoiceFlash securities relying upon the integrity of the market price of VoiceFlash's securities and market information relating to VoiceFlash, and have been damaged thereby.

39.     During the Class Period, Defendants materially misled the investing public, through its SEC filings and certain press releases, thereby inflating the price of VoiceFlash's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material, adverse information and misrepresented the truth about the company, its business and operations, including, inter alia:

(a)    that the Company's financial statements were not prepared in accordance with generally accepted accounting principles and in accordance with the federal securities laws and SEC regulations concerning fair reporting;

(b)    that the Company had violated GAAP and its own accounting policies by improperly recognizing revenues, income and earnings;

(c)    that the Company's estimates, projections and opinions as to its expected revenues, earnings, income and value of its stock were lacking in reasonable basis at all relevant times;

(d)    that a substantial portion of the Company's revenues for the 2002 fiscal period were fabricated in that hundreds of thousands of dollars of reported income were improperly recognized.  More specifically, according to the ACH Agreement with VoiceFlash subscribers, "1% (one percent) of the reserve will be placed in a general reserve fund and not subject to return upon termination."  During the 2002 Fiscal period, UCT had $899,078.63 in reserve funds payable. Based on the above agreement, VoiceFlash could only recognize as income $8,990.79, but, instead, had improperly reported as income, in the 2002 fiscal period, $312,666. Thus, VoiceFlash's revenues for the 2002 Fiscal period were overstated by at least $300,000; and

(e)    that the Company's financial results were not audited in accordance with Generally Accepted Auditing Standards.

-15-

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

40.     The market for VoiceFlash's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, VoiceFlash's common stock traded at artificially inflated prices during the Class Period. Plaintiff and the other members of the Class purchased or otherwise acquired VoiceFlash securities relying upon the integrity of the market price of VoiceFlash's securities and market information relating to VoiceFlash, and have been damaged thereby.

41.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of VoiceFlash's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material, adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

42.     At all relevant times, the material misrepresentations and omissions particularized in this complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and the other members of the Class.  As described herein, during the Class Period Defendant made or caused to be made a series of materially false or misleading statements about VoiceFlash's business, prospects and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of VoiceFlash and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and the other members of the

-16-

Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## SCIENTER

43.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading, knew that such statements or documents would be issued, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding VoiceFlash, their control over and/or receipt of information of VoiceFlash's allegedly materially misleading misstatements and/or their associations with the Company that made them privy to confidential proprietary information concerning VoiceFlash, participated in the fraudulent scheme alleged.

### Applicability Of
### Presumption Of Reliance:
### Fraud-On-The-Market Doctrine

44.     At all relevant times, the market for VoiceFlash's securities was an efficient market for the following reasons, among others:

(a)     VoiceFlash's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, VoiceFlash filed periodic public reports with the SEC and the NASDAQ;

(c)     VoiceFlash regularly communicated with public investors via established market communication mechanisms, including through regular

-17-

disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     VoiceFlash was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

45.     As a result of the foregoing, the market for VoiceFlash's securities promptly digested current information regarding VoiceFlash from all publicly-available sources and reflected such information in VoiceFlash's stock price. Under these circumstances, all purchasers of VoiceFlash's securities during the Class Period suffered similar injury through their purchase of VoiceFlash's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

46.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking

statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of VoiceFlash who knew that statement was false when made.

## COUNT I

### Violation Of Section 10(b) Of
### The Exchange Act And Rule 10b-5
### Promulgated Thereunder Against All Defendants

47.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.    Throughout the Class Period, VoiceFlash and the Individual Defendants, carried out a plan, scheme, and course of conduct that was intended to and did: (i) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of VoiceFlash's securities; and (iii) cause Plaintiff and the other members of the Class to purchase VoiceFlash's securities at artificially inflated prices. In furtherance of this unlawful scheme and course of conduct, Defendants took the actions set forth herein.

49.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for VoiceFlash's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

-19-

50.     In addition to the duties of full disclosure imposed on Defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, Defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. §§ 210.01 et seq.) and Regulation S-K (17 C.F.R. §§ 229.10 et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition, and earnings so that the market price of the Company's securities would be based on truthful, complete, and accurate information.

51.     VoiceFlash and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal material, adverse information about the business, operations, and future prospects of VoiceFlash as specified herein.

52.     Defendants employed devices, schemes and artifices to defraud, while in possession of material, adverse, non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of VoiceFlash's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about VoiceFlash and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of VoiceFlash's securities during the Class Period.

-20-

53.     The Individual Defendants' primary liability, and controlling person liability, arises

from the following facts: (i) the Individual Defendants were high-level officers and/or directors at

the Company during the Class Period; (ii) the Individual Defendants were privy to and participated

in the creation, development and reporting of the Company's internal budgets, plans, projections

and/or reports; and (iii) the Individual Defendants were aware of the Company's dissemination of

information to the investing public that they knew or recklessly disregarded was materially false and

misleading.

54.     Defendants had actual knowledge of the misrepresentations and omissions of material

facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and

to disclose such facts, even though such facts were available to them. Such Defendants' material

misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and

effect of concealing VoiceFlash's operating condition and future business prospects from the

investing public and supporting the artificially inflated price of its securities. As demonstrated by

Defendants' overstatements and misstatements of the Company's business, operations and earnings

throughout the Class Period, Defendants, if they did not have actual knowledge of the

misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by

deliberately refraining from taking those steps necessary to discover whether those statements were

false or misleading.

55.     As a result of the dissemination of the materially false and misleading information

and failure to disclose material facts, as set forth above, the market price of VoiceFlash's securities

was artificially inflated during the Class Period. In ignorance of the fact that market prices of

VoiceFlash's publicly-traded securities were artificially inflated, and relying directly or indirectly

on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material, adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired VoiceFlash securities during the Class Period at artificially high prices and were damaged thereby.

56.    At the time of said misrepresentations and omissions, Plaintiff and the other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known of the true financial condition and business prospects of VoiceFlash, which were not disclosed by Defendants, Plaintiff and the other members of the Class would not have purchased or otherwise acquired their VoiceFlash securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

57.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II

### Violation Of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

59.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

-22-

60.     The Individual Defendants acted as controlling persons of VoiceFlash within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

62.     As set forth above, VoiceFlash and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this complaint.  By virtue of their positions each as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of VoiceFlash's and the Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 2, 2003

VIANALE & VIANALE, LLP

By: _____
Kenneth J. Vianale
Fla. Bar No. 0169668
E-mail: kvianale@vianalelaw.com
Julie Prag Vianale
Fla. Bar No. 0184977
E-mail: jvianale@vianalelaw.com
The Plaza - Suite 801
5355 Town Center Road
Boca Raton, Florida 33486
Telephone: (561) 391-4900
Facsimile: (561) 368 -9274

**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**
Mel E. Lifshitz
Joseph R. Seidman, Jr.
10 East 40th Street
New York, NY  10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218

**Attorneys for Plaintiff**

## CERTIFICATION OF NAMED PLAY
## PURSUANT TO FEDERAL SECURITIES LAWS

I, DEBORAH A. METTER ("Plaintiff"), declare the following as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the complaint filed in this matter and has authorized the filing of a complaint based on similar allegations in a related or amended complaint. Plaintiff retains Bernstein Liebhard & Lifshitz, LLP and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action.

3.    Plaintiff is willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial. I understand that the litigation is not settled, this is not a claim form, and sharing in any recovery is not dependent upon execution of this Certification

4.    Plaintiff's transaction(s) in the VOICEFLASH NETWORKS, INC. security that is the subject of this action during the period of 3/15/02 through 1/24/03 are as follows:

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| 10,000 | VFNX | Buy | 6/6/02 | (64¢) 4977.80 |
| 7,000 | VFNX | Buy | 12/24/02 | (0075) 694.40 |
| 20,000 | VFNX | Buy | 1/23/02 | (0075) 1,572.50 |

**Please list other transactions on a separate sheet of paper, if necessary.**

5.    During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for the class in any action filed under the federal securities laws except as indicated here:

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, or as ordered or approved by the court, including a ny a ward f or r easonable c osts a nd e xpenses ( including l ost w ages) d irectly r elating t o t he representation of the class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25 day of March, 2003.

_Deborah A. Metter_
Signature

DEBORAH A. METTER
Print Name

# CIVIL COVER SHEET 03 - 80257

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required fir the use by the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
DEBORAH A. METTER, individually and on behalf of all others similarly situated

## DEFENDANTS
VOICEFLASH NETWORKS, INC., ROBERT J. KAUFMAN, THOMAS C. TEPER, STEVEN SERLE and MARK BRODY

**RIGHT BOX FILED**

**CIV - HURLEY**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **Fairfield, CT**
(EXCEPT IN U.S. PLAINTIFF CASES)

Palm Beach 03-80257 CIV DTK H Lynch

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

APR 0 2 2003

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER
Vianale & Vianale LLP
5355 Town Center Road, Suite 801
Boca Raton, FL 33486
Tel: 561-391-4900

ATTORNEYS (IF KNOWN)

MAGISTRATE JUDGE
LYNCH

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: DADE,   MONROE,   BROWARD,   PALM BEACH,   MARTIN, ST. LUCIE,   INDIAN RIVER,   OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in This State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to district Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | B ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | B ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | B ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | B ☐ 640 RR & Truck | | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers | Injury Product Liability | B ☐ 650 Airline Regs | | Corrupt Organizations |
| B ☐ 152 Recovery of Defaulted | Liability | **PERSONAL PROPERTY** | B ☐ 660 Occupational | | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | ☐ 370 Other Fraud | Safety/Health | | ☒ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 371 Truth in Lending | B ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 380 Other Personal | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | Property Damage | | | 12 USC 3410 |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle | ☐ 385 Property Damage | | | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | Product Liability | | | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | | | ☐ 893 Environmental Matters |
| | | | | | ☐ 894 Energy Allocation Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | **A PROPERTY RIGHTS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B ☐ 510 Motions to Vacate | | ☐ 820 Copyrights | ☐ 900 Appeal of Fee Determination |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | | ☐ 830 Patent | Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **HABEAS CORPUS** | | ☐ 840 Trademark | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | Accommodations | B ☐ 530 General | | | State Statutes |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | A ☐ 535 Death Penalty | **A LABOR** | **B SOCIAL SECURITY** | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | B ☐ 540 Mandamus & Other | ☐ 710 Fair Labor Standards Act | ☐ 861 HIZ (1395ff) | A OR B |
| | | B ☐ 550 Civil Rights | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | |
| | | B ☐ 555 Prison Condition | ☐ 730 Labor/Mgmt Reporting | ☐ 863 DIWC/DIWW | |
| | | | & Disclosure Act | (405(g)) | |
| | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | |
| | | | A ☐ 791 Empl Ret Inc | **FEDERAL TAX SUITS** | |
| | | | Security Act | A ☐ 870 Taxes (U S Plaintiff or Defendant) | |
| | | | | A ☐ 871 IRS – Third Party 26 USC 7609 | |

## VI. CAUSE OF ACTION (CITE THE U S CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

15 U.S.C. Sections 78j(b) and 78t(a)

LENGTH OF TRIAL
via _____ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:
DEMAND $
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE **Kenneth A. Marra**   DOCKET NUMBER **03-80099**

DATE
**April 2, 2003**

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT $100 _____ APPLYING IFP 880084 _____ JUDGE _____ MAG JUDGE _____

04/03/03